IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CECELIA GIBBS, | * |
| | * |
|     PLAINTIFF, | * |
| | * |
| VS. | *   CASE NO. 1:05-CV-912-MHT |
| | * |
| P & C GROCERS, INC., and | * |
| CHARLES PARKER, individually and as | * |
| an agent for P & C Grocers, Inc., | * |
| | * |
|     DEFENDANTS. | * |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*COMES NOW*, the Plaintiff by and through her undersigned attorney and submits this, her brief in opposition to the Defendants' Motion for Summary Judgment, stating as follows:

## STATEMENT OF THE FACTS

The Plaintiff worked at the Defendants' store located on Highway 52 in Eunola, Alabama. (Exhibit A, page 9). Mr. Charles Parker (Defendant Parker) and P & C Grocers, Inc. purchased a total of nine stores including the one in Eunola on January 5, 2004. (Exhibit B, page 8). The Defendant Parker was the president of Defendant P & C Grocers, Inc. during the incidents complained of. (Exhibit B, page 9). Once the stores were purchased, the Defendant Parker began making trips to the Eunola store one-to-two times per week. (Exhibit A, page 48). On these occasions, the Plaintiff claims that Defendant Parker would touch and rub her shoulders, back, neck and arms while she attempted to work. (Exhibit A, pages 64-65, 66). This was witnessed by other store employees and customers in the store. (Exhibits C; Exhibit D). The Defendant Parker admits that he probably placed one or both hands on the Plaintiff's shoulders, but only to the extent that it was a pat on the back. (Exhibit B, pages 37 and 39).

The Plaintiff asserts that she told the Defendant Parker to refrain from touching her, but

that he continued to touch her. (Exhibit A, pages 72, 77-78; Exhibit C; Exhibit D). Specifically, the Plaintiff claims she got ugly with Defendant Parker telling him to keep his hands to himself. (Exhibit A, page 79). The Plaintiff would walk away from Defendant Parker; however, Defendant Parker repeated his conduct the next time he came into the store. (Exhibit A, page 80). It was shortly after Plaintiff was ugly with Defendant Parker that she was terminated from her employment with the store. (Exhibit A, page 79).

The Plaintiff also claims that the Defendant Parker told the Plaintiff repeatedly that she needed to go to church and pray concerning what he believed was her drinking problem. (Exhibit A, page 105). The Plaintiff contends that she told the Defendant Parker that her relationship with God was none of his business. (Exhibit A, page 118). The Defendant Parker contends that the Plaintiff asked him to help her with her drinking problem, and that in response he told her to go talk to a preacher and pray. (Exhibit B, page 65). The Defendant Parker also contends that this was the sole conversation with the Plaintiff concerning religion. (Exhibit B, page 65). Plaintiff denies this, and states that when the Defendant Parker called her to terminate her employment, he told the Plaintiff she needed to get right with God and quit drinking before he could rehire her. (Exhibit A, page 88). Further, the Plaintiff denies that she asked the Defendant Parker for advice on her drinking. (Exhibit A, page 164).

The Defendant Parker contends that he terminated the Plaintiff's employment because her drinking was affecting her job. (Exhibit B, page 19). The Defendant Parker specifically denies that there were any other problems with the Plaintiff's employment such as missing money or shoplifting. (Exhibit B, page 19, 21-22, 68). The Defendant admits that the Plaintiff had never been written up for misconduct and that there was never any evidence of her drinking on the job site other than the smell of her breath. (Exhibit B, page 17, 18, 58). Specifically, the Defendant Parker refused to submit this reason to the Unemployment Agency when the Plaintiff applied for

unemployment benefits. (Exhibit B, page 24). The Plaintiff contends that while she did drink at home, she never drank at the stores and the Plaintiff was never impaired by alcohol during her operation of the store. (Exhibit A, page 109, 116, 195; Exhibit E). Further, the Plaintiff claims that she never took money from the store and has never been reprimanded for drinking at work. (Exhibit A, page 116-17, 196-97).

There was not a policy for the store relating to religious and sex discrimination until a short time before the Plaintiff was terminated. (Exhibit B, page 44). The Defendant Parker assumed that the Plaintiff knew to report any misconduct to him. (Exhibit B, page 13). Further, the Defendant cannot say that he went over the policy of the store regarding religious or sex discrimination or harassment with the Plaintiff shortly after the store was purchased. (Exhibit B, page 32).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgement is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. To survive a motion for summary judgment, a plaintiff need "only present evidence from which a jury might return a verdict in his favor." *Samples v. City of Atlanta*, 846 F.2d 1328, 1330, (11th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). If he does so, there is a genuine issue of fact that requires a trial." *Id*.

The Court in considering summary judgment must view the evidence in the light most favorable to the non-moving party. *Id*. If a reasonable fact-finder considering the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue a material fact, then the Court should not grant summary judgment. *Id* (quoting *August Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988)(per curiam)). Further, if reasonable minds could differ on the inferences arising from undisputed facts, then the Court

should deny summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997)(citing *Miranda v. B & B Cash Grocery Store, Inc.*, 957 F.2d 1518 (11th Cir. 1992)). The issue of material fact required by Rule 56(c) is not required to be resolved conclusively in favor of the party asserting its existence. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S. Ct. 1575, 10 L.Ed.2d 569 (1968). All that is required to survive summary judgment is that the evidence supporting the claimed factual dispute is sufficient to required a jury to resolve the parties' differing versions of the truth at trial. *Id.* at 289.

## ARGUMENT

The Plaintiff, by her first claim, asserts that the Defendant, Charles Parker engaged in sexual harassment of the Plaintiff, and that in retaliation for the Plaintiff's complaints to him about this conduct, she was terminated by the Defendant Charles Parker.

To succeed in a claim for hostile work environment sexual harassment, the plaintiff must establish a prima facie case "(1) that the employee belongs to a protected group, (2) that the employee was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex; and (4) that the harassment complained of affected a 'term, condition, or privilege of employment in that it was 'sufficient severe or pervasive to alter the conditions of employment and create an abusive working environment." *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th. Cir. 1987). In considering whether the action complained of was so pervasive as to make it hostile or abusive, the court may consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offense utterance, and whether it unreasonable interferes with an employee's work performance, and the effect on the employee's psychological well-being. *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 23, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993).

Title VII also prohibits quid-pro-quo sexual harassment in which to establish a prima facie

case the plaintiff must show "(1) that the employee belongs to a protected group, (2) that the employee was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, and (4) that the employee's reaction to the harassment complained of affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment." *Sparks.* at 1564 (quoting *Henson v. Dundee*, 682 F.2d 897 (11th Cir. 1982)).

Under Title VII an employer is directly liable for its own sexual harassment of its employees. *Id.* at 1558. *See also* 42 U.S.C. §2000e-2(a)(1). An employer is defined as a "person engaged in an industry affecting commerce. . .and any agent of such a person. *Id.* When this is the case, the plaintiff need not establish that she gave anyone notice of the harassment. *Id.* (citing *Hunter v. Allis-Chalmers Corp., Engine Div.* 797 F.2d 1417 (7th Cir. 1986). Where the sexual harassment is perpetrated by a supervisor and results in an adverse official act or tangible employment action, the employer is **strictly** liable for the supervisor's harassment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 138, 124 S. Ct. 2342, 159 L.Ed.2d 204 (2004) (**emphasis added**) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 724 (1998)). Where the harasser is in the "upper echelons of management - one who [is] 'indisputably within that class of an employer organization's officials who may be treated as the organization's proxy" –then the employer is strictly liable regardless of the form the harassment took. *Rossi v. Troy State University*, 330 F.Supp.2d 1240 (M.D. Ala. Sept. 30, 2002) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

The Plaintiff also claims that the Defendants discriminated against her on the basis of her religious beliefs or the lack of sharing the Defendant Charles Parker's religious beliefs. Title VII protects persons who are not members of an organized religious group, and even atheists. *Tillery v. Asti, Inc.*, 242 F. Supp.2d 1051, 1058 (N.D. Ala. Jan.15, 2003) (citing *International Association of Machinists & Aerospace Workers v. Boeing Co.*, 833 F. 2d 165 (9th Cir. 1987)) (citing also, *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140 (5th Cir. 1975)). To establish a prima facie case

of religious discrimination because of her lack in sharing the employer's religious beliefs, the plaintiff must show that "(1) he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs. *Id* at 1061.

    Lastly, the Plaintiff claims that the Defendants retaliated against the Plaintiff for her complaints to the Defendant Charles Parker about his unwelcome advances and the religious discrimination by terminating her employment. The plaintiff is required to show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Cotton v. Cracker Barrel Old County Store, Inc.*, 434 F.3d (11th Cir. 2006). In order to recover, it is not required that the plaintiff prove her underlying claim of discrimination which led her to protest, but only that she had a reasonable good faith belief that the discrimination existed. *Holifield*, 115 F.3d at 1556. Under her claim of retaliation, the *McDonnell Douglas* burden shifting analysis is employed. *Rossi*, 330 F.Supp.2d at 1250. The initial burden rests with the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). Once the plaintiff meets this burden the presumption of discrimination arises. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discrimination explanation for the action taken. *Id.* "If the employer succeeds in carrying its intermediate burden of production, the McDonnell Douglas framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the ultimate issue in the case: whether the plaintiff has proven that the employer intentionally discriminated against [her]." *Id.* at 1061 (citing *St. Mary's Honor Ctr. v. Hicks*, ___ U.S. ___, 113 S. Ct. 2742 (1993)). After an employer has proffered a legitimate non-

discriminatory reason for its actions, the burden shifts back to the plaintiff to prove that the reason is a pretext. *Rossi* at 1250. The Plaintiff may prove this by directly persuading the court that the discriminatory reason more likely motivated the employer or indirectly showing that the employer's proffered explanation is unworthy of credence. *Id.*

The Plaintiff contends that a genuine issue of material fact exists as to whether the Defendant Parker engaged in sexual harassment and religious discrimination against the Plaintiff, and whether the Plaintiff was terminated by the Defendants for complaining of the Defendant Parker's inappropriate touching and conversations. The Plaintiff contends that she has met the prima facie showing for both quid-pro-quo and hostile work environment sexual harassment. The Plaintiff claims that Defendant Parker would touch and rub her shoulders, back, neck and arms while she attempted to work. (Exhibit A, pages 64-65, 66). This was witnessed by other store employees and customers in the store. (Exhibits C and D, Affidavits of April Crosby and Jason Crosby). The Plaintiff contends she informed the Defendant Parker to refrain from touching her, but that he continued to touch her. (Exhibit A, pages 72, 77-78; Exhibit C; Exhibit D). Specifically, the Plaintiff claims she got ugly with Defendant Parker telling him to keep his hand to himself. (Exhibit A, page 79). The Plaintiff would walk away from Defendant Parker; however, Defendant Parker repeated his conduct the next time he came into the store. (Exhibit A, page 80).

Further, the Defendant contends that she has made a prima facie showing that the Defendant discriminated against her because of her religious beliefs. The Defendant Parker told the Plaintiff repeatedly that she needed to go to church and pray concerning what he believed was her drinking problem. (Exhibit A, page 105). The Plaintiff contends that she told the Defendant Parker that her relationship with God was none of his business. (Exhibit A, page 118). The Defendant Parker contends that the Plaintiff asked him to help her with her drinking problem, and that in response he told her to go talk to a preacher and pray. (Exhibit B, page 65). The Defendant Parker

also contends that this was the sole conversation with the Plaintiff concerning religion. (Exhibit B, page 65). Plaintiff denies this, and states that when the Defendant Parker called her to terminate her employment, he told the Plaintiff she needed to get right with God and quit drinking before he could rehire her. (Exhibit A, page 88). Further, the Plaintiff denies that she asked the Defendant Parker for advice on her drinking. (Exhibit A, page 164).

The Defendant Parker in this case was in the "upper echelons of management. . . .indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." Mr. Charles Parker (Defendant Parker) and P & C Grocers, Inc. purchased a total of nine stores including the one in Eunola on January 5, 2004. (Exhibit B, page 8). The Defendant Parker was the president of Defendant P & C Grocers, Inc. during the incidents complained of. (Exhibit B, page 9). As such was the case, regardless of any policy which came into place shortly before Plaintiff was terminated, the Plaintiff was not required to give notice to anyone regarding the harassment and discrimination she withstood.

The Plaintiff also contends that the Defendants terminated her employment because she complained of these actions and got ugly with the Defendant Parker about his touching and comments. The Defendant claims that the reason for terminating the Plaintiff was because her drinking impaired her job. (Exhibit B, page 19). The Plaintiff contends that the Defendants' reason for terminating the Plaintiff is a mere pretext. The Defendant Parker specifically denies that there were any other problems with the Plaintiff's employment such as missing money or shoplifting. (Exhibit B, page 19, 21-22, 68). The Defendant admits that the Plaintiff had never been written up for misconduct and that there was never any evidence of her drinking on the job site other than the smell of her breath. (Exhibit B, page 17, 18, 58). Specifically, the Defendant Parker refused to submit this reason to the Unemployment Agency when the Plaintiff applied for unemployment benefits. (Exhibit B, page 24). The Plaintiff contends that while she did drink at home, she never

drank at the stores and the Plaintiff was never impaired by alcohol during her operation of the store. (Exhibit A, page 109, 116, 195; Exhibit E).

The Plaintiff has made the prima facie showing that she was subjected to sexual harassment and religious discrimination. Further the Plaintiff has provided sufficient evidence to make a genuine issue of material fact exist as to whether the Defendants' proffered reason for terminating the Plaintiff was a pretext. Because of all of the above, the Defendants' Motion for Summary Judgment is due to be denied.

Respectfully submitted this the 12 day of May, 2006.

_____
Charles W. Blakeney, BLA068
Attorney for Plaintiff
Post Office Box 100
Geneva, Alabama 36340
334-684-2387

## CERTIFICATE OF SERVICE

I hereby certify that on the 12 day of May, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Hon. Michael S. Jackson

_____
Charles W. Blakeney