IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **CECELIA GIBBS,** * | |
| * | |
| PLAINTIFF, * | |
| * | |
| VS. * | Case No.: 1:05-CV-00912-MHT |
| * | |
| **P & C GROCERS, INC.,** and * | |
| **CHARLES PARKER, individual and as an** * | |
| agent for P & C Grocers, * | |
| * | |
| DEFENDANTS. * | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on November 29, 2006, wherein the following proceedings were held and actions taken:

1. **PARTIES AND TRIAL COUNSEL**:

    The Plaintiff is Cecelia Gibbs, and she will be represented by Honorable Charles W. Blakeney during the trial of this matter. The Defendants are P & C Grocers, Inc. and Charles Parker, individually and as an agent for P & C Grocers, Inc. The Defendants will be represented by Honorable Michael S. Jackson during the trial of this matter.

    **COUNSEL APPEARING AT PRETRIAL HEARING**:

    Same as trial counsel.

2. **JURISDICTION AND VENUE**

    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(4); 28 U.S.C. Section 2201 and 2202. The actions taken by the Defendants which are the subject of this suit were committed by Defendants within Geneva County, Alabama.

Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b).

3. **PLEADINGS**: The following pleadings and amendments were allowed:

| Date | Pleading | Party Filing |
| --- | --- | --- |
| September 23, 2006 | Complaint | Plaintiff |
| January 5, 2006 | Answer to Complaint | Defendants |
| April 13, 2006 | Motion for Summary Judgment with Brief/Memorandum in Support by Defendants | Defendants |
| May 12, 2006 | Response in Opposition to Summary Judgment by Plaintiff | Plaintiff |

4. **CONTENTIONS OF THE PARTIES**:

**a. Plaintiff**: On January 6, 2004, the Defendant, Charles Parker, the owner of P & C Grocer began making weekly visits to the gas/convenience store where the Plaintiff was the manager. The Defendant, Charles Parker is the owner of a total of 18 gas/convenience stores in the area. The store that the Plaintiff worked at is located on East Highway 52 in Geneva, Alabama. During each visit, the Defendant Parker would massage the Plaintiff's back and shoulders, and the Defendant Parker would lecture the Plaintiff about God. The Plaintiff requested that the Defendant Parker refrain from further discussing God with the Plaintiff. This continued until the Plaintiff was fired on June 23, 2004 by the Defendant Parker. The Plaintiff had told the Defendant Parker to stop touching her during the week of June 7-11, 2004. On June 23, 2004, the Plaintiff discovered that the Defendant Parker was training someone to take the Plaintiff's place, and the Plaintiff went to work upset. Because the Plaintiff was so upset, she left work. The Defendant Parker then called the Plaintiff's home, and when the Plaintiff confronted the Defendant Parker about the situation, the Defendant Parker informed the Plaintiff that she was fired and that she needed to "Get right with God." During the Plaintiff's

2

employment, the Defendant Parker made derogatory sexual statements about other employees to the Plaintiff and told the Plaintiff to fire a male employee for dating a co-employee. On April 27, 2004, the Defendant Parker made derogatory sexual comments about the employee he wanted the Plaintiff to fire. The Plaintiff was subjected to a harassing work environment and the Plaintiff was fired because she told the Defendant Parker that these actions were not acceptable and requested that the Defendant Parker refrain from lecturing the Plaintiff about God. At the time of all of the discriminatory conduct, the Defendant Parker was the President of the Defendant corporation, P & C Grocers, Inc.

**b. Defendants**: Defendant Parker was not Plaintiff's "employer" and is not liable pursuant to Title VII and the remedies provided for therein. P & C Grocers, Inc. at all times had a written policy with regards to sexual and religious harassment. Plaintiff did not follow the written policy with regard to sexual and religious harassment and made no complaints and provided no notice to the persons set forth in the written policy regarding sexual and religious harassment. Plaintiff has provided no dates as to when the alleged sexual or religious harassment/discrimination occurred. P & C Grocers, Inc. timely conducted an investigation into Plaintiff's claim after she filed her claim with the EEOC. Plaintiff had an adequate remedy to address and redress alleged sexual harassment and/or religious discrimination and did not avail herself of same. Plaintiff was terminated due to constant and continuous problems with alcohol abuse and other problems which disrupted the business operations of P & C Grocers, Inc. P & C Grocers, Inc. had a legitimate, non-discriminatory basis for terminating the employment of the Plaintiff. P & C Grocers, Inc. is not liable to the Plaintiff for the conduct described because P & C Grocers, Inc. had no notice of same and no opportunity to address same until Plaintiff filed a charge with the EEOC. Parker is not liable to the Plaintiff individually for intentional infliction of emotional distress or "outrage", assault, battery or any other tort.

At some point prior to Gibb's termination, Parker testified that two employees of the store requested a meeting with Parker. Parker did not know the purpose of the meeting until his arrival; however, he noted there was a store customer in attendance in addition to the two employees. The three women told Parker about problems Gibbs was causing with the co-employees and with customers due to Gibbs' erratic conduct and that they smelled alcohol on her when she was in the store working. Parker thereafter talked to Gibbs about the complaints he'd received from the co-workers and customer. This occurred prior to Gibbs' termination. Parker claims his reason for firing Gibbs was based upon:

> Her drinking problems, calling me at night, 9:00, 10:00, 11:00 at night. Sometimes I'd be asleep and my wife would take to her. If I was at the store real early in the morning, you could smell alcohol on CC's breath bad a lot of mornings. I didn't say every morning. I said a lot of mornings. And that's why I talked to her about her drinking problem, because if it could be smelled on her in the store, then it was a problem to me.

Parker further stated that his partner, Carroll, had told Parker that Gibbs called him while intoxicated and he had told Gibbs not to call him anymore when she'd been drinking. Carroll also told Parker that if he did not fire Gibbs that he would fire her.

5. **STIPULATIONS BY AND BETWEEN THE PARTIES**

Plaintiff, Cecila Gibbs (hereinafter "Gibbs"), was an employee of P&C Grocers, Inc. (hereinafter "P & C"), working at its convenience store located in Eunola, Alabama. Gibbs had been employed at this particular convenience store on and off for approximately four years through various owners which owned the store prior to P & C purchasing it. During this period, prior to being employed by P&C, Gibbs was eventually promoted from clerk to manager.

In January 2004, P&C was formed and, shortly thereafter, the store at which Gibbs was

4

employed was lease-purchased by P&C. Defendant Parker is President and a shareholder of the corporation. John Trotman Carroll (hereinafter "Carroll") is also an owner and shareholder. Carroll had been involved in management of the store when it was owned by P&C's predecessor and had been the district manager over the stores acquired by P&C. After P&C acquired this and other stores, Parker acted as the district manager over some of the stores including the store at which Gibbs was employed and would come to the store once or twice a week to check on the store  Carroll and Cindy Woolover, who was also a district manager, would occasionally come to the store to check on things as well. Both parties agree that there was an occasion wherein one of the employees at the store came up $60.00 short in the register. There was a meeting and a conversation between at least Parker and Gibbs over this issue. The parties dispute whether the employee was present and  what occurred and what was said between them when the meeting occurred.

Sometime in January or February  2004, Parker learned that a married, male employee was having an affair with another married, female employee whose husband had filed for divorce and subpoenaed Gibbs to testify. When Gibbs received the subpoena to testify, she made the female employee give notice. Parker asked Gibbs why Gibbs was in Court. Gibbs told Parker about the affair. Gibbs advised the employee that he was to be terminated and he tendered his store keys. Parker came to the store to discuss the situation with the employee but the employee was not at the store. Parker inquired of Gibbs why the employee didn't come to the store for the meeting and Gibbs advised Parker that the employee had turned in his keys. The parties stipulate that Parker made a statement related to co-employees having a relationship but dispute exactly what was said between them when Parker was

talking to Gibbs about the issue.

The parties stipulate that on occasion there were conversations between the two of them about Gibbs visiting a church and/or a church pastor and Gibbs' consumption of alcohol on her off time. The parties dispute exactly what was discussed in these conversations and the parties dispute whether the conversations included consumption of alcohol on her work time.

Gibbs spoke daily with Cindy Garret, a store clerk. These calls were initiated sometimes by Gibbs and sometimes by Garret, and sometimes it was after Gibbs had been drinking alcohol.

In or about April/May 2004, there was a managers' meeting held which Gibbs attended. Present at the meeting were the owners of the company, the district managers and the all of the store managers, including Gibbs. During the meeting, a handbook was given to all managers to be kept on their store premises. Upon returning from the meeting, Gibbs held an employee meeting during which she let the employees know of the company policy handbook and that each employee should read it. There was a section of the handbook that specifically addressed sexual harassment. Someone at the meeting read parts of the handbook to the managers. It was Gibbs' understanding that every employee was to read the handbook and sign an acknowledgment form attesting that they have read the handbook. There was a sexual harassment/discrimination poster displayed on the wall near the bathroom at the store throughout the four years Gibbs was employed.

Before Gibbs was terminated, Gibbs learned that someone had been hired to replace her and called Parker at his home to confront him. Parker told Gibbs they would discuss the matter the following day. The following day, Gibbs went to work, then left the store within forty-five minutes because she was upset that she was going to be fired. Gibbs called another employee into the store to cover her shift and went home. Parker called Gibbs at home from the store. The parties stipulate that

Parker fired Gibbs when talking to her on the telephone but dispute exactly what was said by and between them. Gibbs was terminated in June 2004. Gibbs did not report any of the incidents made the basis of her claims to anyone. She did not tell Cindy Woolover or Carroll. Gibbs did not report any of the alleged instances of Parker's inappropriate conduct or remarks to anyone.

**It is ORDERED that:**

**(1) The jury selection and trial of this cause, which is to last two (2) days, are set for January 8, 2007, at 10:00 a.m., at the Federal Courthouse in Dothan, Alabama;**

**(2) The parties are to file their pre-trial briefs by January 3, 2007;**

**(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the list of his or her exhibits;**

**(4) At least three days before trial, counsel are to contact the courtroom deputy clerk about the procedures for pre-marking all trial exhibits;**

**(5) Each party shall have available a sufficient number of copies of each photostatically**

reproducible exhibit for each of the jurors, opposing counsel, the courtroom deputy clerk, the law clerk, and the judge; and

(6) All understandings, agreements, and stipulations contained in this pretrial order shall be binding on all parties unless an objection is noted and filed with the court within seven (7) days from the date of this order.

DONE, this the 30th day of November, 2006.

                          /s/ Myron H. Thompson
                          UNITED STATES DISTRICT JUDGE