IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **CECELIA GIBBS,** | * |
| | * |
|     **PLAINTIFF,** | * |
| | * |
| VS. | *   **CASE NO. 1:05-CV-912-MHT** |
| | * |
| **P & C GROCERS, INC.,** and | * |
| **CHARLES PARKER,** individually and as | * |
| an agent for P & C Grocers, Inc., | * |
| | * |
|     **DEFENDANTS.** | * |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

*COMES NOW*, the Plaintiff and requests the Trial Judge to read the following Jury Instructions to the Jury and to inform the Jury that said instructions are correct propositions of law and should be considered by the Jury in their deliberations as party of the law in this case.

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 1
### Introductory Instructions

Members of the Jury:

Now that you have heard all of the evidence and the arguments of counsel, it becomes my duty to explain to you the rules of law that you must follow and apply in deciding this case. When I have finished you will go to the jury room and begin your discussions—what we call your deliberations.

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with the law or not. Regardless as to any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base your verdict upon anything other than the evidence in the case. Also, you are not to single out one instruction alone as stating the law, but must consider these instructions as a whole.

You must also not let your decision be influenced in any way by either sympathy for or

prejudice against anyone. Both the public and the parties expect that you will carefully and impartially consider all of the evidence without prejudice or bias or sympathy, follow the law as stated by the court, and render a just verdict regardless of the consequences. Our system of law does not permit jurors to be governed by bias, prejudice, or sympathy, or by public opinion.

In your deliberations you should consider only the evidence—that is, the testimony of the witnesses and the exhibits—that I have admitted in the record. However, as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, an ultimate conclusion.

Remember that anything that the lawyers say is not evidence in the case. The function of the lawyers is to point to those things most significant or most helpful to their side of the case. It is your own recollection and interpretation of the evidence that controls. What the lawyers say is not binding upon you. Also, you should not assume from anything that I may have said or any questions I may have asked that I have any opinion concerning any of the issues before you in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision concerning the facts.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not necessarily controlling. You may decide that the testimony of a smaller number of witnesses concerning any fact in dispute is more believable than the testimony of a larger number of witnesses to the contrary.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the person impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the cases? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

When knowledge of a specified subject matter might be helpful to the jury, a person having special training or experience in that field—one who is called an expert witness—is permitted to state his or her opinion concerning those specialized matters. Merely because an expert witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

Now, this is a civil case, not a criminal case. Some of you may know that in a criminal case the burden of proof is "beyond a reasonable doubt." This is not the burden of proof in this case

because, as I said, this is a civil case.

In this case, it is the responsibility of the party having the burden of proof to satisfy that burden by a "preponderance of the evidence," where the court indicates that is the burden of proof, of by "clear and convincing evidence," where the court indicates that is the burden of proof. Throughout these instructions the court will indicate what must be proved by a preponderance of evidence and what must be proved by clear and convincing evidence.

A "preponderance of the evidence" simply means an amount of evidence which is enough to persuade you that what is sought to be proved is more likely true than not true. "Clear and convincing evidence" means evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion; proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence, but less than beyond a reasonable doubt.

In deciding whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them. If the court indicates that what is to be proved must be proved by preponderance of evidence and the proof fails to establish any essential part of what is sought to be proved by a preponderance of the evidence, then you should find against the party having the burden of proof. Similarly, if the court indicates that one or more of the elements of what is sought to be proved must be proved by clear and convincing evidence, and the proof fails to establish the element or elements by clear and convincing evidence, then you should find against the party having the burden of proof.

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 2
### Gibb's Sexual Harassment Claim

Gibbs' firm claim is that she was subjected to sexual harassment in the workplace. Gibbs is protected from sexual harassment in the workplace.

To establish a claim of sexual harassment under Title VII, Gibbs thus must prove by a preponderance of the evidence each of the following elements:

(1)     That Gibbs was subjected to sexual harassment;

(2)     That the harassment was unwelcome;

(3)     That the harassment complained of was based upon sex---- that is, but for the fact of her sex she would not have been the object of harassment; and

(4)     That the Defendants are either "directly" or "indirectly" liable.

As to the first element, there are two types of "sexual harassment." One type is "quid pro quo" sexual harassment, and the other type is "hostile environment" sexual harassment. Gibbs must show that one or both types of sexual harassment occurred to be successful on this first element.

Quid pro quo sexual harassment occurs when a supervisor alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands. In other words, a supervisor relies upon his apparent or actual authority either to extort sexual consideration from an employee or to cause some tangible job detriment to the employee or to cause some tangible job detriment to the employee for failure to comply with the supervisor's demands. Also, to create liability under this theory of sexual harassment, the acceptance or rejection of the harassment must be an express or implied condition upon the receipt of a tangible job benefit or the cause of a tangible job detriment. An employee must show that she was deprived of a job benefit or subject to a tangible job detriment that she was otherwise qualified to receive because of her supervisor's use of a prohibited criterion — in this case, sex — in making the employment decision.

Hostile environment sexual harassment occurs when a supervisor's or co-employee's

conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment. To establish liability under this theory, the harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. A victim of hostile environment sexual harassment need not demonstrate the loss of a tangible job benefit. To determine whether the harassment was sufficiently severe or pervasive, you must consider the totality of the circumstances. The totality of the circumstances includes the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. As part of the totality of the circumstances, you may consider whether Gibbs suffered psychological harm. Gibbs, however, need not prove that she suffered psychological harm to succeed on this claim. Again, you must look at the totality of the circumstances and not focus exclusively on any one factor; no single factor is required.

     The conduct giving rise to a hostile or offensive work environment need not consist of sexual advances or have clear sexual overtones. Conduct of a nonsexual nature which, for example, ridicules women or treats them as inferior because of their sex, can constitute prohibited sexual harassment.

     As to the second element, the conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive.

     As to the third element, you are instructed that the fact that a supervisor and an employee are of the same sex, although a matter for your consideration, does not preclude a finding that the supervisor sexually harassed the employee on the basis of her sex.

     If you do not find that Gibbs has established each of the first three elements by a

preponderance of the evidence --- that is, that she was subjected to unwelcome sexual harassment as I have explained it to you --- you need not consider the fourth element — that is, whether the defendants can be held liable for the sexual harassment.

As to the fourth element, the defendants may be either "directly" or indirectly" liable. The defendants would be "indirectly" liable under a theory called "respondeat superior." Under this theory, the Defendants would be liable if you are convinced by a preponderance of the evidence:

(1) That the Defendants knew or should have known of the sexual harassment; and

(2) That the Defendants failed to take prompt, remedial action to stop the harassment in question.

If you are so convinced, you must hold the defendants liable for the sexual harassment. However, if you believe either that the defendants had no knowledge of the sexual harassment or that they had knowledge but took prompt, remedial action, you may not hold the defendants indirectly liable for the sexual harassment under the respondeat superior theory.

Defendants can also be held "directly" liable for the sexual harassment if the employee who engaged in the sexual harassment was a supervisor who acted as an "agent" of the employer. Under this theory, the Defendants may be held liable even if they took prompt, remedial action. To hold the defendant liable under this theory, however, you must be convinced by a preponderance of the evidence that the supervisor was aided in accomplishing the sexual harassment by existence of the employment relationship. That is, the defendants can be held liable for the sexual harassment engaged in by a supervisor where the supervisor was exercising authority actually delegated to him or her by the defendants — by making or threatening to make decisions affecting the employment status of his or her subordinates. The defendants can thus be held liable where it was their delegation of authority to the supervisor that empowered the supervisor to engage in the sexual harassment in questions. The defendants are not shielded from liability under this theory simply

because the supervisor was acting entirely for his or her own benefit.

The supervisor who engaged in the harassment need not necessarily be high in the business structure, nor does he or she have to have the authority to hire, fire, or promote in order to be considered an agent whose conduct is binding on the defendants. A supervisor who has much less authority and is merely in the intermediate structure of the employer can be considered an agent. In determining whether a person acts in a supervisory or agency capacity, you must examine the circumstances of the particular individual. While the supervisor's direct authority over the person harassed must be considered as a relevant factor, you must also examine any evidence bearing on the overall structure of the workplace, including the relative positions of the parties involved.

Therefore, if you find that the person who subjected Gibbs to sexual harassment was an agent of the defendants under this theory, you must hold the defendants directly liable for this conduct. If you do not find that the person was an agent of the defendants and also that Gibbs has failed to prove that the defendants are liable under the respondeat superior theory, you must not hold the defendants liable for the sexual harassment.

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 3
### Gibb's Religious Discrimination Claim

Gibbs' firm claim is that she was subjected to religious discrimination in the workplace. It is unlawful to discharge or otherwise to discriminate with respect to compensation, terms, conditions, or privileges of employment because of an individual's religion.

To establish a claim of religious discrimination under Title VII, Gibbs thus must prove by a preponderance of the evidence each of the following elements:

(1)   That Gibbs was subjected to religious harassment and discrimination;

(2)   That the harassment was unwelcome;

(3)   That the harassment complained of was based upon Gibbs' religion---- that is, but for the fact of her religion she would not have been the object of harassment; and

  (4)  That the Defendants are either "directly" or "indirectly" liable.

  Quid pro quo religious harassment occurs when a supervisor alters an employee's job conditions as a result of the employee's religious beliefs. An employee must show that she was deprived of a job benefit or subject to a tangible job detriment that she was otherwise qualified to receive because of her supervisor's use of a prohibited criterion, religion, in making the employment decision.

  As to the second element, the conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive.

  If you do not find that Gibbs has established each of the first three elements by a preponderance of the evidence --- that is, that she was subjected to unwelcome religious harassment or discriminated against because of her religious beliefs as I have explained it to you --- you need not consider the fourth element — that is, whether the defendants can be held liable for the sexual harassment.

  As to the fourth element, the defendants may be either "directly" or indirectly" liable. The defendants would be "indirectly" liable under a theory called "respondeat superior." Under this theory, the Defendants would be liable if you are convinced by a preponderance of the evidence:

  (1)  That the Defendants knew or should have known of the religious harassment or discrimination; and

  (2)  That the Defendants failed to take prompt, remedial action to stop the harassment in question.

If you are so convinced, you must hold the defendants liable for the religious harassment or religious discrimination. However, if you believe either that the defendants had no knowledge of the religious harassment or discrimination or that they had knowledge but took prompt, remedial action,

you may not hold the defendants indirectly liable for the religious harassment under the respondeat superior theory.

Defendants can also be held "directly" liable for the religious harassment if the employee who engaged in the religious harassment was a supervisor who acted as an "agent" of the employer. Under this theory, the Defendants may be held liable even if they took prompt, remedial action. To hold the defendant liable under this theory, however, you must be convinced by a preponderance of the evidence that the supervisor was aided in accomplishing the harassment by existence of the employment relationship. That is, the defendants can be held liable for the harassment engaged in by a supervisor where the supervisor was exercising authority actually delegated to him or her by the defendants — by making or threatening to make decisions affecting the employment status of his or her subordinates. The defendants can thus be held liable where it was their delegation of authority to the supervisor that empowered the supervisor to engage in the harassment in question. The defendants are not shielded from liability under this theory simply because the supervisor was acting entirely for his or her own benefit.

The supervisor who engaged in the harassment need not necessarily be high in the business structure, nor does he or she have to have the authority to hire, fire, or promote in order to be considered an agent whose conduct is binding on the defendants. A supervisor who has much less authority and is merely in the intermediate structure of the employer can be considered an agent. In determining whether a person acts in a supervisory or agency capacity, you must examine the circumstances of the particular individual. While the supervisor's direct authority over the person harassed must be considered as a relevant factor, you must also examine any evidence bearing on the overall structure of the workplace, including the relative positions of the parties involved.

Therefore, if you find that the person who subjected Gibbs to religious harassment or discrimination on the basis of Gibbs' religion was an agent of the defendants under this theory, you

must hold the defendants directly liable for this conduct. If you do not find that the person was an agent of the defendants and also that Gibbs has failed to prove that the defendants are liable under the respondeat superior theory, you must not hold the defendants liable for the religious harassment or discrimination.

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 4
### Gibb's Retaliation Claim

Gibbs's third claim is that the defendants retaliated against her because she complained of sexual harassment and religious discrimination by Charles Parker and then filed an EEOC Charge. Retaliation occurs when an employer takes an adverse employment action against any employee because the employee has engaged in a protected activity. You are instructed that Gibbs's complaint about Charles Parker and the filing of a Charge of Discrimination with the EEOC are protected activities.

To establish a claim of retaliation against the defendants, Gibbs must prove by a preponderance of the evidence each of the following elements:

(1) That she complained to the defendants about sexual harassment and/or religious discrimination by Charles Parker and/or she filed a charge of discrimination;

(2) That Gibbs was subjected to an adverse employment action by the defendants; and

(3) That the defendants took the adverse employment action because of Gibbs's complaint and/or filing the charge.

If you find that Gibbs was subjected to more than one adverse employment action, you must consider Gibbs's claim of retaliation separately for each such action.

You are further instructed that an employee may be subjected to an adverse employment action for good reason, a bad reason, or no reason, as long as the reason was not for the purpose of retaliating because the employee complained. As long as the adverse employment action was taken

for a reason other than retaliation, it does not matter whether you agree with the other reason or whether the other reason showed poor judgment. The ultimate issue for you is whether Gibbs has established that she was subjected to retaliation as claimed.

As stated above, the defendants may not retaliate against Gibbs because she complained about sexual harassment and religious discrimination by Parker. Further, Gibbs did not have to be right about her complaint of discrimination in order to be protected from retaliation as long as she had a good faith belief that she had been harassed or discriminated against when she complained.

The defendants claim that any adverse employment action taken against Gibbs was not adverse or was based on her breaking certain work rules, and not for the purpose of retaliation. Gibbs claims that defendants' justification that they took any adverse employment action because of Gibbs's conduct is a "pretext," that is, a false justification, and that the real reason was retaliation. You must consider whether Gibbs has convinced you by a preponderance of the evidence both that the defendants' justification for any adverse employment action is a pretext and that the real reason for the adverse employment action was retaliation. If Gibbs has not so convinced you, that is, you believe that the defendants took the adverse employment action for a reason other than retaliation, you must return a verdict for the defendants on this claim.

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5
### Gibb's Claim of Intentional Infliction of Emotional Harm

A plaintiff is entitled to recover damages for the intentional infliction and unreasonable infliction of emotional distress which proximately results in foreseeable physical harm. The law does not permit recovery of damages for transitory and trivial emotional distress alone. However, a plaintiff is entitled to recover damages for severe emotional distress alone, without any accompanying physical harm, if such severe emotional distress was actually and proximately caused by the extreme and outrageous unprivileged conduct of another done either with the specific intent to cause emotional distress or with a reckless disregard of the probability of causing such distress.

One of plaintiff's claims is that the defendants Charles Parker and P & C Grocers, Inc. intentionally inflicted severe emotional distress upon the plaintiff. On this claim or cause, plaintiff has the burden of establishing by a preponderance of the evidence all the facts necessary to prove the following issues:

1. that a defendant's conduct was outrageous;

2. that a defendant acted with the intent to cause plaintiff severe emotional distress, or in reckless disregard of the probability of causing such emotional distress;

3. that such an act of a defendant was a proximate cause of injury and damage to plaintiff;

4. the nature and extent of the injuries claimed to have been suffered, the elements of plaintiff's damage and the amount thereof.

By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has a more convincing force and the greater probability of truth.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon the issue regardless of who produced it.

Extreme and outrageous conduct is conduct which goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.

Extreme and outrageous conduct is not mere insults, indignities, threats, annoyance, petty oppressions or other trivialities. All persons must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.

Extreme and outrageous conduct, however, is conduct which would cause an average member of the community to immediately react with outrage, if he or she heard the facts of the

incident.

The term "emotional distress" as used in these instructions is often described in common usage by various other terms, such as mental distress, mental suffering or mental anguish. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry.

The word "severe" as used in these instructions in the phrase 'severe emotional distress' means substantial or enduring as distinguished from trivial and transitory. Severe emotional distress is emotional distress of such substantial quantity or enduring quality that no reasonable person in a civilized society should be expected to endure it.

In determining the severity of emotional distress you should consider its intensity and duration.

A defendant intended to inflict emotional disregard if it is established that he desired to cause such distress or knew that such distress was substantially certain to result from his or her conduct.

A defendant's conduct is in reckless disregard of the probability of causing emotional distress if he or she has knowledge of a high degree of probability that emotional distress will result and acts with deliberate disregard of that probability or with wanton disregard of the possible results.

In order to prevail on her claims involving intentional infliction of emotional distress, the plaintiff must prove: (1) that defendants' conduct was intentionally reckless; (2) that defendants' conduct was extreme and outrageous; (3) that the defendants' wrongful conduct caused emotional distress; and (4) that the emotional distress was severe.

As to the first element, that defendants' conduct was intentional or reckless: the plaintiff must show that the defendant desired to inflict severe emotional distress upon him or her, and knew that such distress was certain or substantially certain to result from the conduct; or he or she must

show the defendant acted recklessly in deliberate disregard of a high degree of probability that the Plaintiff would suffer emotional distress.

As to the second element of intentional infliction of emotional distress, the defendants' conduct must be extreme and outrageous, the plaintiff must show that defendants' conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. In general, the conduct must be such as to arouse the resentment of average members of the community such as yourselves to such an extent that you would use the term "outrageous" in describing it. In considering whether defendants' conduct was extreme and outrageous, you may consider that the plaintiff's status as employee may entitle her to a greater degree of protection from insult and outrage than if she was a stranger to the defendants. The particular relationship of employer and employee can subject the defendants' conduct to greater scrutiny.

Third element: that the distress must have been caused by the defendants.

The fourth and last element of intentional infliction of emotional distress is that the plaintiff must show that she suffered a severe emotional response to defendants' alleged wrongful conduct. That distress must be so severe that a reasonable man or woman would not be expected to endure it.

### PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 6
#### Damages

If you find that Gibbs may recover on any of her four claims against the defendants — Sexual Harassment, Religious Discrimination, Retaliation, and Intentional Infliction of Emotional Harm — then you should find in her favor and award appropriate damages, if any have been sustained. In determining the amount of money damages Gibbs is entitled to, you are instructed that you are not to consider in any way whether Gibbs has collected damages from any other source. That is ,you are not to make any adjustment to your calculation of damages because you believe that

Gibbs may or may not have collected damages from another source.

Gibbs seeks both "compensatory" and "punitive" damages from the defendant on each of her four claims. If you find in favor of Gibbs on any of her four claims, you must determine for every claim on which she succeeds whether she is entitled to each type of damages — compensatory and punitive — and if so, how much. Of course, if you find that Gibbs has not succeeded on any of her claims, you need not consider damages at all, and your deliberations are at an end. I will now discuss with you the standards for awarding each type of damages.

A. Compensatory Damages

Compensatory or actual damages are allowed and should be awarded where a party satisfies the jury by a preponderance of the evidence that the party has been injured or damaged by the wrongful act or acts of the party charged. The purpose of awarding compensatory damages is to fairly and reasonably compensate the injured party for the loss or injury actually sustained. Compensatory damages are intended as money compensation to the party wronged, to compensate him or her for the injury and other damages which have been inflicted as a proximate result of or were proximately caused by the wrong complained of. By proximate cause, the court means that cause which in the natural and probable sequence of events, and without the intervention of any new or independent cause, produces the injury or damage and without which such injury or damage would not have occurred.

Gibbs seeks compensatory damages for the following items: (1) loss of earnings; and (2) emotional distress. Gibbs seeks damages for loss of earnings under her Sexual Harassment, Religious Discrimination and Retaliation claims; Gibbs seeks damages for emotional distress under each of her four claims. I am now going to discuss each of theses items of claimed damages with you.

    1. Loss of Earnings. In determining the amount of damages for loss of earnings, you

should consider any evidence of Gibbs's actual earnings, the manner in which she ordinarily occupied her time before she was dismissed, and her inability to pursue her occupation. In awarding compensatory damages for loss of earnings, your goal is to make Gibbs whole by determining the amount of earnings she lost as a proximate result of defendants' conduct.

A person claiming compensatory damages has a duty to mitigate those damages — that is, to take advantage of any reasonable opportunity she may have had under the circumstances to reduce or minimize the loss or damage. So, if you should find from a preponderance of the evidence that Gibbs failed to seek out or take advantage of a business or employment opportunity that was reasonably available to her under all the circumstances shown by the evidence, then you should reduce the amount of her damages by the amount she could reasonably have earned if she had taken advantage of such opportunity.

2. <u>Emotional Distress</u>. The law has no fixed monetary standard to compensate for emotional distress. This element of damages is left to your good sound judgment and discretion as to what amount would reasonably and fairly compensate the party wronged — that is, Gibbs — for such emotional distress as you find from the evidence she did suffer. If you are satisfied by a preponderance of the evidence that Gibbs had undergone emotional distress as a proximate result of the wrongs in question, you should award a sum which will reasonably and fairly compensate her for such emotional distress already suffered and for any emotional distress which you are satisfied by a preponderance of the evidence that she is reasonably certain to suffer in the future.

B. <u>Punitive Damages</u>

As I mentioned before, Gibbs is seeking two types of damages. The second type is punitive damages. The purpose of awarding punitive damages is to allow money recovery to the injured party by way of punishment to the wrongdoer, and for the added purpose of protecting the public by deterring the wrongdoer and others from doing such wrong in the future. The imposition of

punitive damages is entirely discretionary with the jury. Should you award punitive damages, in fixing the amount, you must take into consideration the character and degree of the wrong as shown by the evidence in the case, and the necessity of preventing similar wrongs. Your verdict should not be based on sympathy, prejudice, passion or bias, but should be directly related to the culpability of the wrongdoer and the necessity of preventing similar wrongs in the future.

The standard for awarding punitive damages depends upon the type of claim for which they are awarded. Accordingly, you must consider the question of punitive damages for each claim upon which Gibbs succeeds, if any, separately and under the appropriate standard. To be entitled to punitive damages for the Sexual Harassment, Religious Discrimination and Retaliation claims, Gibbs must first prove by a <u>preponderance of the evidence</u> that the defendants acted with malice, willfulness, or with callous and reckless indifference to her rights. "Willfully" means intentionally, knowingly, and purposefully. Therefore, willfulness is the conscious doing of some act or omission of some duty under knowledge of existing conditions coupled with a design or purpose to inflict injury.

<u>**PLAINTIFF PROPOSED JURY INSTRUCTION NO. 7**</u>
<u>Final Instructions</u>

Of course, the fact that I have given you instructions concerning the issues of Gibbs's damages should not be interpreted in any way as an indication that I believe that Gibbs should, or should not, prevail upon her claims against either or all of the defendants. Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.

But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case. When you go to the jury you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the security officer who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at that time.

Verdict forms have been prepared for your convenience. You will take the verdict forms to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict forms, date and sign them, and then you will return to the courtroom.

Respectfully submitted this 22nd day of December, 2006.

                          s/ Charles W. Blakeney
                          Charles W. Blakeney, BLA068
                          Attorney for Plaintiff
                          Post Office Box 100
                          Geneva, Alabama 36340
                          334-684-2387

**CERTIFICATE OF SERVICE**

      I do hereby certify that I have on this 22nd day of December, 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of each filing to the following:

Michael S. Jackson, JACKM8173
BEERS, ANDERSON, JACKSON
   PATTY & VAN HEEST, P.C.
Post Office Box 1988
Montgomery, Alabama 36102

                                                    **s/ Charles W. Blakeney**
                                                    Charles W. Blakeney